Submitted March 11, affirmed October 7, 2009, petition for review denied February 4, 2010 (347 Or 608)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LESTER RAY ROBERTS,
*Defendant-Appellant.*

Lane County Circuit Court
200608879; A133927

219 P3d 41

Patrick M. Ebbett and Chilton, Ebbett & Galli, LLC, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Doug M. Petrina, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

LANDAU, P. J.

**LANDAU, P. J.**

In this criminal appeal, the issue is whether the state provided adequate notice to defendant of its intention to rely on certain sentence enhancement facts. We affirm.

The relevant facts are undisputed. On May 8, 2006, defendant was charged by indictment with burglary and theft. The state did not allege any sentence enhancement facts in the indictment. On September 27, 2006, the day before trial, the state faxed to defense counsel a notice of its intention to seek an enhanced sentence on the basis of two enhancement facts: (1) that defendant was on post-prison supervision when he committed the offenses and, thus, that supervision had failed to deter him from further criminal activity; and (2) that defendant had been persistently involved in similar offenses. At trial the next day, defendant moved to strike the state's notice as untimely, but the trial court denied the motion. After a trial to the court, defendant was found guilty as charged.

Defendant then requested one week to prepare for sentencing. The court obliged and set October 9, 2006, as the date for sentencing.

The parties appeared for a one-hour sentencing hearing on that date, which was nearly two weeks after the state provided its notice. After hearing testimony, the court sentenced defendant to 60 months' imprisonment and 36 months' post-prison supervision, which was longer than the presumptive sentence for the offenses. The court agreed that the state had proved both of the grounds for imposing an enhanced sentence, but expressly found that either ground would independently support the enhanced sentence.

On appeal, defendant assigns error to the trial court's denial of his motion to strike the state's notice of its intent to rely on sentence enhancement facts, renewing his contention that the state's notice was untimely. According to defendant, the notice was untimely for two reasons. First, he contends, the timing of the state's notice did not comport with the requirement set out in ORS 136.765 that notice of an intention to rely on sentence enhancement facts be provided "[w]ithin a reasonable time" after filing the indictment.

Second, he argues, the timing of the state's notice violated his federal constitutional rights to due process of law and "to be informed of the nature and cause of the accusation." For either reason, defendant contends, the state's notice—provided nearly five months after the filing of the indictment and the day before trial—was inadequate as a matter of law. As a result, he concludes, the court did not have authority to impose the enhanced sentence on the basis of those facts. Defendant does not contend that he was unable to prepare adequately a defense against the enhancement facts.[1]

The state responds that its notice complied with the requirements of ORS 136.765. According to the state, the statute requires only that a defendant receive notice of the state's intention to rely on sentence enhancement facts "[w]ithin a reasonable time," suggesting that the controlling question is whether the time in this case was "reasonable" under the circumstances. In this case, the state argues, because the record is undisputed that defendant had ample time to prepare an adequate defense on the sentence enhancement allegations, the timing of its notice was reasonable, and the trial court did not err in so concluding.

■     In advancing its argument that the trial court did not err in denying defendant's motion to strike, the state contends that our role is to determine whether the court abused its discretion in determining that the timing of the notice was reasonable within the meaning of ORS 136.765. In the alternative, however, the state contends that, even if the determination of the reasonableness of its notice is reviewed for errors of law, the trial court did not err. And, as an additional alternative argument, the state asserts that, even if the trial court erred in assessing the reasonableness of the notice, any error does not require reversal because defendant has not demonstrated that he was harmed by the timing of the notice.

■     We begin with the issue of the appropriate standard of review. The controlling question is the meaning of the phrase "[w]ithin a reasonable time," as it is used in ORS

_____

[1] We reject defendant's challenges to the timing of the state's notice on federal constitutional grounds. Those claims of error are unpreserved, and defendant does not assert that they constitute "plain error."

136.765. The state cites no authority for its suggestion that the determination of the meaning of the statutory phrase triggers review for an abuse of discretion, and we are aware of none. Ordinarily, the interpretation of statutory wording entails a question of law. *Karjalainen v. Curtis Johnston & Pennywise, Inc.*, 208 Or App 674, 681, 146 P3d 336 (2006), *rev den*, 342 Or 473 (2007). Consistently with that general rule, in statutory speedy trial cases, we review a trial court's determination whether the defendant was brought to trial "within a reasonable period of time" for errors of law. On point in that regard is the Supreme Court's decision in *State v. Johnson*, 339 Or 69, 116 P3d 879 (2005). That case involved the question whether the trial court erred in denying the defendant's motion to dismiss on statutory speedy trial grounds. The relevant statutes require the state to bring charges within a specified time or face dismissal, "unless good cause * * * is shown," ORS 135.745, and require the state to bring a case to trial "within a reasonable period of time" or face dismissal of the charging instrument, ORS 135.747. If, however, there is "sufficient reason" for the delay, another statute provides that the court "may order the action to be continued." ORS 135.750. On appeal, the state argued that, taken together, ORS 135.747 and ORS 135.750 trigger review for an abuse of discretion.

The Supreme Court disagreed. The court explained:

"We acknowledge the temptation to treat indefinite terms like 'good cause,' 'sufficient reason,' and 'reasonable period of time' as calling for a subjective determination and, thus, as invoking personal judgment. However, it is clear that, when such terms appear in a statutory context, they are focused on real, albeit sometimes difficult to discern, legal standards: the *legislature's* view of what is 'good,' 'sufficient,' or 'reasonable.' As such, in the absence of a factual dispute, a determination that 'good cause' not to dismiss has been shown * * * or that * * * 'sufficient reason' not to dismiss has been shown * * * invokes an objective standard and must be reviewed for legal error. In no case would judicial *discretion* play any role in the 'good cause' determination * * *. And, more importantly for our purposes, neither would it play any role in the 'reasonable period of time' and 'sufficient reason' determinations * * *."

339 Or at 86 (emphasis in original; footnote omitted).

The same reasoning would seem directly applicable to the nearly identical determination required under ORS 136.765. The issue under that statute is what the legislature intended when it required that the state provide notice of its intention to rely on sentence enhancement facts "[w]ithin a reasonable time after filing the accusatory instrument." That is a question of law, not a matter of discretion.

■■    We turn, then, to the central issue in this case—that is, whether the trial court correctly determined that the timing of the state's notice complied with the requirement of ORS 136.765 that such notice be given "[w]ithin a reasonable time after filing the accusatory instrument." In construing a statute, our task is to ascertain the meaning intended by the legislature that enacted it. To do that, we examine the statutory text in its context along with any relevant legislative history and, if necessary, relevant canons of statutory construction. *State v. Gaines*, 346 Or 160, 170-71, 206 P3d 1042 (2009). Statutory context includes other provisions of the same statute and related statutes. *Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997); *Hale v. Klemp*, 220 Or App 27, 32, 184 P3d 1185 (2008).

ORS 136.765 provides:

"In order to rely on an enhancement fact to increase the sentence that may be imposed in a criminal proceeding, the state shall notify the defendant of its intention to rely on the enhancement fact by:

"(1)   Pleading the enhancement fact in the accusatory instrument; or

"(2)   Within a reasonable time after filing the accusatory instrument, providing written notice to the defendant of the enhancement fact and the state's intention to rely on it."

An "enhancement fact" is "a fact that is constitutionally required to be found by a jury in order to increase the sentence that may be imposed upon conviction of a crime." ORS 136.760(2). When, as occurred in this case, a defendant waives the right to a jury trial on an enhancement fact and elects to have it decided by the court, the enhancement fact— whether related to the offense or to the defendant—is tried

during the sentencing phase of the proceedings. ORS 136.770(2); ORS 136.773(2). Although ORS 136.765 requires the state to provide notice "[w]ithin a reasonable time after filing the accusatory instrument" (when the enhancement fact has not been pleaded in the accusatory instrument), when a case returns to a trial court on remand from an appellate court, if the state wishes to rely on an enhancement fact, it must provide such notice "within a reasonable time before resentencing" pursuant to ORS 136.790.

As written, the statutes do not specify any particular period of time within which the state must provide notice of its intention to rely on sentence enhancement facts. It bears noting that the legislature knows how to do that, even when employing a "reasonableness" timing requirement. *See, e.g.,* ORS 133.731(1) ("Within a reasonable time but not later than 90 days after the termination of the period of an order issued under ORS 133.724, or extensions thereof, the issuing or denying judge shall cause to be served * * * an inventory * * *."); ORS 153.105 ("A motion for relief [from a default judgment] must be made by the defendant within a reasonable time, and in no event may a motion under this section be made more than one year after entry of judgment."). The absence of a specific period of time certainly suggests that the legislature intended some measure of flexibility in assessing whether the state has provided notice within a "reasonable time."

Still, the reference to a "reasonable time" could refer to any number of different things. It could, for example, require an analysis of the attendant circumstances with a particular emphasis on the *justifications* for any delay, as in statutory speedy trial cases. *See, e.g., Johnson,* 339 Or at 88 (for the purposes of ORS 135.747, "the circumstances that cause the delay generally will determine whether the delay * * * is reasonable"). Or it could, to take another example, require a focus on the *effect* of any delay, specifically, whether delay caused harm or prejudice to the defendant, as in constitutional speedy trial cases. *See, e.g., State v. Harberts,* 331 Or 72, 88, 11 P3d 641 (2000) (analysis of speedy trial claim under Article I, section 10, of the Oregon Constitution includes determination whether delay caused prejudice to a defendant). The text of ORS 136.765 alone does not aid us in

determining which of those the legislature intended or, indeed, whether the legislature had something else in mind.

The legislative history, however, does. What is now ORS 136.765 was the product of a work group that the Governor established in response to the United States Supreme Court's decision in *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), which recognized a defendant's federal constitutional right to a jury trial on any facts that increase the defendant's sentence beyond a presumptive sentence under state sentencing guidelines. The work group consisted of representatives of the Governor's Office, the courts, the legislature, the Oregon Department of Justice, the Oregon District Attorneys Association, the Office of Public Defense Services, and the Oregon Criminal Defense Lawyers Association, among others. The notice requirement originated in the work group's draft, which became Senate Bill (SB) 528.

During hearings on SB 528 before the Senate Judiciary Committee, there are only a few references to the origins of the notice requirement in the bill. Chuck French, from the Multnomah County District Attorney's Office and a member of the work group, explained that "this legislation * * * only requires us to provide notice within a due process, constitutional due process, period of time prior to the, prior to the actual trial." Audio Recording, Senate Judiciary Committee, SB 528, Mar 31, 2005, http://www.leg.state.or.us/listn/archive/archive.2005s/SJUD-200503311309.ram, at 24:57 (statement of Chuck French) (accessed Oct 1, 2009). He also acknowledged that there was a difference of opinion in the work group about whether to gauge a "reasonable time" from after the accusatory instrument or from before the start of trial. He testified that the group recommended the former due to a concern that cases might go to trial too quickly to enable the state to provide a timely notice under the latter. *Id.* at 46:54.

Assistant Attorney General Jennifer Lloyd, testifying on behalf of the Oregon Department of Justice, expressed concern about calculating "reasonable time" from the accusatory instrument at least with respect to cases on remand:

"My concern is if we have these cases coming back for a remand that were originally charged and proceeded with,

the case was concluded before we even had the *Blakely* decision, we may have cases going back for remand where the prosecution has no opportunity to give notice within a reasonable time after filing the accusatory instrument because the accusatory instrument would have been filed years before.

"*And so I know that the committee battled a bit about this reasonable time issue and whether we should pick a time frame or whether reasonable time was fine, and whether it should relate to the time of the filing of the charging instrument as opposed to the time of trial.* But one way to fix that problem would be to say, to change this focus from the time of the filing of the accusatory instrument to the time of the trial * * * or the proceeding on remand. So, instead of it being within a reasonable time after filing the accusatory instrument it would be within a reasonable time before trial or sentencing or something like that.

"I certainly can't speak for the committee on that because *it was a contentious issue*, but I think that that language does need to be clarified in order to allow the prosecution to use this new procedure on remand in a case that was originally handled before *Blakely*."

Audio Recording, Senate Judiciary Committee, SB 528, Mar 31, 2005, http://www.leg.state.or.us/listn/archive/archive.2005s/SJUD-200503311309.ram, at 43:54 (statement of Jennifer Lloyd) (accesssed Oct 1, 2009) (emphasis added). At the time of that testimony, SB 528 did not include the provision that was eventually enacted as ORS 136.790; the bill was later amended to include that provision, which, as we have noted, requires that, in a case on remand, the state must provide its notice "within a reasonable time before resentencing."

A more direct comment on the intended meaning of the notice requirement in ORS 136.765 may be found in the record of the floor debates in the Senate. After the bill was reported out of the Senate Judiciary Committee, Senator Ginny Burdick, the chair of the Senate Judiciary Committee and member of the work group, was designated as the carrier of the bill. In her explanation of the bill to her colleagues in the full Senate, she specifically referred to the intention behind the phrase at issue in this case:

"[The bill requires that the state provide] notice within a reasonable time after filing an indictment. What is meant in this bill is that the notice of an aggravating factor that has to be issued under Senate Bill 528, *the notice has to be sufficient to provide an effective defense for the defendants.* It has to provide notice sufficient to provide an *effective representation or preparation to defend against those aggravating factors either in the course of the guilt / innocen[ce] phase or in a separate jury proceeding.*"

Audio Recording, Senate Floor Debate, SB 528, June 9, 2005, http://www.leg.state.or.us/listn/archive/archive.2005s/SENATE-200506091029.ram, at 58:30 (statement of Sen Ginny Burdick) (accessed Oct 1, 2009) (emphasis added). Immediately after her statement, the bill passed the Senate with a nearly unanimous vote.

Although Senator Burdick's statement is that of only one legislator, it is compelling for a number of reasons. First, it bears on the precise issue in this case—that is, the standard that the legislature intended to apply with its "[w]ithin a reasonable time" requirement in ORS 136.765. She specifically stated that "[w]hat is meant" by the disputed phrase is that the state must "provide notice sufficient to provide an effective representation or preparation to defend" against the alleged enhancement facts. *See State v. Kelly*, 229 Or App 461, 467-68, 211 P3d 932 (2009) (stating that, "the more clearly the history speaks to the meaning of the disputed terms in issue, the more weight the history will be accorded"). Second, she made the statement during the third reading of the bill on the Senate floor, in front of the full Senate. No one contradicted her characterization of the intended meaning of the disputed phrase, and, furthermore, the bill passed immediately after her statement with a nearly unanimous vote. *See id.* at 467 (providing that a statement by a legislator that better reflects the intention of the legislature as a whole will be accorded greater weight). Third, Senator Burdick was designated as the carrier of the bill, one who is knowledgeable about the contents and intended meaning of a bill and whose views are generally regarded as authoritative. *See, e.g., Liberty Northwest Ins. Corp. v. Vasquez*, 147 Or App 704, 708, 938 P2d 237 (1997) (statements of carriers of bill in the House and the Senate regarded as determinative).

■ We conclude that the requirement of ORS 136.765 that the state provide a defendant with notice of its intention to rely on enhancement facts "[w]ithin a reasonable time" is intended to be time sufficient to allow the defendant to prepare a defense against those particular enhancement facts. Whether a time is adequate for a defendant to prepare a defense will depend on the circumstances in each case. One of those circumstances is whether the enhancement fact is one that will be submitted at the guilt phase or at the sentencing phase of the criminal proceeding.

■ In this case, it is undisputed that the enhancement facts related to defendant and would not be tried until the sentencing phase of defendant's criminal proceeding. *See* ORS 136.773. There is no indication in the text of ORS 136.765 or in its legislative history that the legislature intended the guilt phase of the criminal proceeding to be the deadline for notice of *all* enhancement facts, whether they be related to the offense or related to the defendant.

Instead, the question before us is whether defendant had an adequate time to prepare his defense against the enhancement facts alleged in this case—that is, the facts that he was on post-prison supervision when he committed the offenses and that he has been persistently involved in similar offenses. The answer to that question is straightforward in this case, especially in light of the fact that defendant has made no assertion to the contrary. Regardless, we conclude that he had ample time to prepare a defense. After the guilty verdict, defendant requested one week to prepare for sentencing; the court scheduled the sentencing hearing nearly two weeks out. The enhancement facts at issue in this case—that defendant was on post-prison supervision when he committed the offenses and that he had been persistently involved in similar offenses—are straightforward allegations for which nearly two weeks is sufficient time to prepare a defense, particularly in the absence of any contrary contention by the defendant.

The trial court did not err in denying defendant's motion to strike the state's notice of the alleged enhancement

facts. Accordingly, we cannot say that the court erred in imposing the enhanced sentence in this case.

Affirmed.